UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BLUE WATER INTERNATIONAL, INC.
*doing business as* HATTRICK'S,

    Plaintiff,

v.                                                                    CASE NO. 8:17-cv-1584-T-23AEP

HATTRICK'S IRISH
SPORTS PUB, LLC,

    Defendant.
_____/

## **ORDER**

Several "Hattrick's" bars serve food and alcohol in the United States.[1] Most market themselves as sports bars (in hockey and soccer, a "hat trick" describes a player's scoring three goals in one game). On this occasion, Hattrick's of Tampa, Florida sues (Doc. 12) Hattrick's of O'Fallon, Missouri for statutory and common law trademark infringement and unfair competition and alleges that the Missouri bar's name and use of a shamrock[2] confuse consumers in some unspecified market. A block from the Tampa Convention Center, the Tampa bar allegedly discovered the Missouri bar after several convention-goers purportedly inquired about the Tampa bar's relation to the Missouri bar. Under Rules 12(b)(2) and (3), Federal Rules of

---

[1] A "Hattrick's" or "Hat trick's" restaurant exists in at least Tampa, Florida; O'Fallon, Missouri; Hatfield, Pennsylvania; Dallas, Texas; and Covington, Kentucky. The restaurants appear unaffiliated.

[2] The Tampa bar replaces the jot in "Hattrick's" with a shamrock; the Missouri bar replaces the apostrophe in "Hattrick's" with a shamrock.

Civil Procedure, the Missouri bar moves (Docs. 7 and 19) to dismiss for lack of personal jurisdiction and improper venue.[3]

**DISCUSSION**

Little or no disagreement appears about the facts. Instead, the parties dispute whether the facts establish the propriety of personal jurisdiction in Florida over the Missouri bar, which sells no food, alcohol, or merchandise in Florida; maintains no office or restaurant in Florida; employs nobody in Florida; purchases no newspaper, television, radio, mail, magazine, or Internet advertisement targeting Florida; and maintains no bank account in Florida. (Doc. 7-2) The Missouri bar maintains accounts on Twitter and Facebook; on Twitter, the Missouri bar "follows" several Florida sports teams, including the Lightning, the Buccaneers, and the Rays.[4] Also, Yelp and TripAdvisor.com maintain pages that permit the public to rate and to read reviews about the Missouri bar. Despite the Missouri bar's lack of contact with Florida, the Tampa bar argues that the Missouri bar subjected itself to personal jurisdiction in Florida by following the Florida sports teams on Twitter and by

---

[3] A plaintiff bears the initial burden of alleging facts sufficient to show a "*prima facie* case of personal jurisdiction." *United Tech. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). An order resolving a motion to dismiss for lack of personal jurisdiction must accept the truth of a well-pleaded factual allegation but need not accept a vague or conclusory statement. *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006). If a defendant submits an affidavit that refutes the factual allegations on which personal jurisdiction depends, the burden "shifts back to the plaintiff to substantiate the jurisdictional allegations." *United Tech. Corp.*, 556 F.3d at 1274.

[4] "Following" an account on Twitter causes "tweets" from that account to appear in the follower's Twitter feed.

posting on Facebook. Implicit in the Tampa Bar's argument is the availability in Florida of the Internet, through which a Floridian might[5] access the Facebook, Twitter, Yelp, or TripAdvisor pages.

The exercise of personal jurisdiction requires both statutory authorization and constitutional sanction. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499 (Fla. 1989). The Missouri bar challenges under both the Florida long-arm statute and the Due Process Clause the exercise of personal jurisdiction in Florida.

**I. Statutory authorization**

First, the Tampa bar argues that the Florida long-arm statute subjects the Missouri bar to general jurisdiction in Florida. (Doc. 13 at 12) Under Section 48.193(2), Florida Statutes, general jurisdiction requires "substantial and not isolated activity within this state." Interpreting that phrase, the Eleventh Circuit explains that a "corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place or business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015).

Incorporated in Missouri (Doc. 13-4), the Missouri bar operates only in O'Fallon, Missouri. (Doc. 7-2 at 1) As explained above, the Missouri bar maintains

---

[5] The complaint contains no well-pleaded factual allegation that a Floridian viewed the Facebook, Twitter, Yelp, or TripAdvisor page, and no record evidence shows that a Floridian viewed any of the pages. Even if a Floridian viewed the pages, that viewing amounts at best to an "attenuated" contact insufficient to sustain personal jurisdiction in Florida. (See Section II)

no restaurant or office in Florida, sells nothing in Florida, employs nobody in Florida, issues no paycheck in Florida, maintains no bank account in Florida, and directs no advertising at Florida. (Doc. 7-2) Nothing about the Missouri bar's relation with Florida "closely approximate[s]" a principal place of business in Florida. *Cf. Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437, 419–20 (1952) (affirming the exercise of general jurisdiction in Ohio over a defendant that corresponded from Ohio, maintained a bank account in Ohio, withdrew money in Ohio from the bank account, directed business from Ohio, and held directors' meetings in Ohio).

Second, the Tampa bar invokes Section 48.193(1)(a)(2), which subjects to the jurisdiction of a Florida court a defendant that "commit[s] a tortious act within this state." The considered weight of authority holds that trademark infringement and unfair competition occur "where the passing off occurs, i.e, where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956) (Waterman, J.); *accord Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294–95 (3d Cir. 1994) (Weis, J.); 6 *McCarthy on Trademarks & Unfair Competition* § 32:38.40 (4th ed. 2017) ("Today, almost all courts follow the [*Vanity Fair*] rule that a claim of trademark infringement takes place where the allegedly infringing sales occur."). Because the defendant undisputedly sells food, alcohol,

and merchandise only in Missouri, the alleged trademark infringement and unfair competition occurred in Missouri.[6]

Nothing in *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), compels a contrary conclusion. Although *Licciardello* states that the alleged infringement "occurred in Florida by virtue of the website's accessibility in Florida" *Licciardello* observes elsewhere that the defendant's "website offered CD's for sale that provided management advice."[7] And evidence in *Licciardello* suggested that the defendant earned at least several thousand dollars from the sale in Florida of allegedly infringing albums. Similarly, in *Nida Corp. v. Nida*, 118 F.Supp.2d 1223, 1226 (M.D. Fla. 2003) (Presnell, J.), the defendant admittedly sold products in Florida. In contrast, the Missouri bar undisputedly sells no food, alcohol, or merchandise in Florida specifically or on the Internet generally. (Doc. 7-2) The Tampa bar cites a Facebook post by the Missouri bar that announces: "New shirts are in! Grab one while they last!" (Doc. 13-6) But no link to purchase a shirt online appears in the post, and an owner of the Missouri bar declares that it sells nothing online.

---

[6] *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201 (Fla. 2010), says nothing about the location of trademark infringement. *Marshall*, which emphasizes its narrow holding, decides only that defamation occurs in Florida if the defendant publishes a defamatory statement accessed in Florida.

[7] Many decisions hold that a website's offering a product for sale fails to establish personal jurisdiction wherever a person might buy the product (in other words, wherever the Internet is available). Rather, the defendant's website must sell a "significant" quantity of goods to people in the forum. *See, e.g.*, *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) (Rymer, J.); *Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F.Supp.2d 1344 (M.D. Fla. 2007) (Antoon, J.); *Bensusan Rest. Corp. v. King*, 937 F.Supp. 295 (S.D.N.Y. 1996) (Stein, J.); *Enter. Rent-A-Car Co. v. Stowell*, 137 F.Supp.2d 1151 (E.D. Mo. 2001) (Mummert, J.); *cf. also Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013) (affirming the exercise of personal jurisdiction over a defendant who undisputedly sold "substantial quantities" of allegedly counterfeit merchandise in Florida).

(Doc. 7-2) In sum, the well-pleaded factual allegations and the record evidence fail to establish the applicability of Sections 48.193(2) or 48.193(1)(a)(2).

**II. Due process**

Even if Florida's long-arm statute authorizes jurisdiction in Florida over the Missouri bar, the exercise of personal jurisdiction violates due process in this instance. Under threat of a default judgment, a summons imposes on a defendant the burden of appearing and defending an action. Due process, from which a long line of decisions discerns the requirement of "minimum contacts," reduces the likelihood that a summons forces a person to litigate in an inconvenient or distant forum. In other words, due process permits a person to predict "with some minimum assurance . . . where" his conduct "will and will not render [him] liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *accord Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). If a person prefers not to litigate in a forum, he can elect not to conduct business there, reasonably confident that he will not face protracted litigation in that forum.

The Tampa bar advances four arguments why the exercise of personal jurisdiction comports with due process: (1) the Missouri bar committed an "intentional tort" in Florida; (2) the tort resulted in harm to the plaintiff, which resides in Florida; (3) a Florida resident can access the Missouri bar's Facebook, Twitter, Yelp, and TripAdvisor accounts; and (4) the Missouri bar follows several Florida sports teams on Twitter. The first two arguments ignore the Supreme

Court's repeated guidance that the minimum-contacts determination depends on the location of the defendant's conduct rather than the location of the plaintiff's injury; the last two arguments impermissibly risk subjecting a defendant to suit throughout the United States.

Citing *Calder v. Jones*, 465 U.S. 783 (1984), the Tampa bar's response (Doc. 13) in opposition emphasizes that the allegedly "intentional" tort harmed the plaintiff, which resides in Florida. Although several decisions arguably interpret *Calder* to authorize personal jurisdiction wherever the plaintiff suffers the "effects" of an intentional tort, a careful reading of *Calder* refutes that interpretation. In *Calder*, a Florida reporter researched and wrote an allegedly defamatory article about a California citizen. Before publication, the reporter telephonically interviewed several California residents and called the defendant's home in California to request comment about the forthcoming article. At publication, the Florida reporter knew that more than 600,000 copies of the allegedly defamatory article would circulate in California.[8]

Affirming the exercise in California of personal jurisdiction over the Florida reporter, *Calder* states that the "brunt of the [plaintiff's] harm . . . was suffered in California." 465 U.S. at 789. But, again, *Calder* observes elsewhere that the "[t]he article was drawn from California sources." If *Calder*'s observation about the location

---

[8] Similarly, the defendant in *Licciardello*, whom the plaintiff employed as a manager, undisputedly knew that the plaintiff resided in Florida. Also, evidence in *Licciardello* suggested that the defendant earned at least several thousand dollars from Florida sales.

of the "brunt of the [plaintiff's] harm" contributes to confusion whether the location of the plaintiff's injury can confer personal jurisdiction, *Walden v. Fiore*, 134 S.Ct. 1115 (2014), resolves the confusion: An analysis that considers the location of the plaintiff's injury "impermissibly allows a plaintiff's contacts with the defendant and the forum to drive the jurisdictional analysis." 134 S.Ct. at 1124.

Also, *Calder* involves defamation, which occurs wherever the defamatory statement circulates. *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 777 (1984). In other words, *Calder*'s discussion of the location of the "effects" "was largely a function of the nature of the libel tort." *Walden*, 134 S.Ct. at 1124 (interpreting *Calder*). As explained above, the weight of authority holds that trademark infringement and unfair competition occur not where the plaintiff suffers an injury but rather where the alleged infringer sells a product. Under *Hanson v. Denckla*, 357 U.S. 235 (1958), *Calder*, and *Walden*, the fact that the plaintiff allegedly suffered an injury in Florida as a consequence of a purportedly "intentional" tort is insufficient to subject the Missouri bar to suit in Florida.

In any event, the confusing and conflicting allegations in the complaint belie the Tampa bar's claim of an "intentional" tort.[9] For example, the Tampa bar alleges that the Missouri bar's "actions . . . appear[] to be an intentional obfuscation on the part of [the Missouri bar]." (Doc. 12 at ¶ 23) An allegation of apparently intentional

---

[9] Two weeks after the motion to dismiss, the Tampa bar amended the complaint. (Doc. 12) Rather than allege facts to show an intentional tort expressly aimed at Florida, the amended complaint persists in alleging, for example, apparently intentional obfuscation, "constructive" knowledge, and negligence.

- 8 -

obfuscation is not an allegation of intentional trademark infringement. And the Tampa bar alleges the hallmark of negligence: the Missouri bar "knew or should have known of" the Tampa bar's putative trademark. (Doc. 12 at ¶ 33) Even if *Calder* and *Licciardello* permit exercising personal jurisdiction in the residence of a plaintiff allegedly harmed by an intentional tort (neither decision so holds), the prospect that the Missouri bar negligently infringed the Tampa bar's putative trademark would fail to establish personal jurisdiction in Florida.

Additionally, the Tampa bar cites the Missouri bar's presence on Facebook, Twitter, Yelp and TravelAdvisor.com, websites accessible in Florida and the other forty-nine states. Unlike a Twitter or Facebook account, which requires a person to register, a business's presence on Yelp or TripAdvisor.com requires no action by the business. For example, Yelp permits any person to report to Yelp the opening of a new restaurant. In determining whether the exercise of personal jurisdiction comports with due process, "the conduct at issue is that of the defendant[]." *Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.,* 207 F.3d 1351, 1356 (11th Cir. 2000). Because no evidence in the present record shows that the Missouri bar created the Yelp or TripAdvisor page, neither page can contribute to the minimum-contacts determination.

Even if the Missouri bar created the Yelp or TripAdvisor page, the exercise of personal jurisdiction in this circumstance up-ends the protection of due process and risks subjecting the defendant to personal jurisdiction in any Internet-accessible

forum (that is, everywhere in the United States). As explained elsewhere in this order, the Missouri bar neither offers anything for sale in Florida nor sells anything in Florida. Subjecting the Missouri bar to personal jurisdiction in Florida merely because a Floridian might view the Missouri bar's Facebook, Twitter, Yelp, or TripAdvisor pages "offend[s] traditional notions of fair play and substantial justice." *Adv. Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir. 2014) (Wood, J.) (observing that a website "should not open a defendant up to personal jurisdiction in every spot on the planet where that [] website is accessible") (quoting *Int'l Shoe Co.*, 326 U.S. at 316).

Finally, the Tampa bar asserts that the Missouri bar's "following" a Florida sports team on Twitter demonstrates a "conscious decision to conduct business in the Florida marketplace." (Doc. 12 at ¶ 47) Of course, the exercise of personal jurisdiction requires some allegation or evidence that the defendant "purposefully avails itself of the privilege of conducting activities within" a state. *Hanson*, 357 U.S. at 253. Under the Tampa bar's implausibly expansive view of personal jurisdiction, the Missouri bar purposefully availed itself of the "privilege of conducting activities" in at least seventeen states by following all the NHL teams on Twitter. And the Tampa bar's argument, which assumes that following a Florida team on Twitter amounts to conducting business "within" Florida, raises somewhat ethereal and stubbornly intractable questions about where, if anywhere, a "tweet" exists.

In any event, common sense refutes the suggestion that the Missouri bar's Twitter activity constitutes an entry into the Florida food-and-alcohol market. More than a thousand miles distant from Tampa, the Missouri bar sells no food or alcohol in Florida for at least the reasons that the bar lacks the licenses necessary to sell food and alcohol in Florida and maintains a presence only in O'Fallon, Missouri. An "attenuated" contact at best, the Missouri bar's following the Buccaneers, the Lightning, and the Rays on Twitter (by itself or in combination with the accessibility in Florida of the Missouri bar's Facebook, Yelp, and TripAdvisor pages) fails to establish personal jurisdiction in Florida. *See World-Wide Volkswagen*, 444 U.S. at 299 (explaining that an "attenuated [] contact" cannot justify personal jurisdiction).

### III. Venue

The Tampa bar alleges that venue in the Middle District of Florida "is proper . . . because Plaintiff is located in this District." Under 28 U.S.C. § 1391(b)(1), venue is proper in the defendant's residence, not the plaintiff's. Incorporated in Missouri and operating only in Missouri, the Missouri bar resides outside the Middle District of Florida.

Also, the Tampa bar alleges that venue in the Middle District of Florida "is proper . . . because certain facts giving rise to the claims" occurred in the Middle District of Florida. Under 28 U.S.C. § 1391(b)(2), venue is proper where a "substantial part of the events or omissions giving rise to the claim occurred." The Tampa bar's one-sentence response to the motion to dismiss

- 11 -

for improper venue states that "[v]enue is proper in the Middle District of Florida because Plaintiff, located in Tampa, Florida, was injured in the district as a result of Defendant's intentional trademark infringement." (Doc. 13 at 16) As explained above, the weight of authority holds that trademark infringement and unfair competition occur not where the plaintiff suffers an injury but rather where the defendant sells an allegedly infringing product. *See, e.g.*, *Woodke v. Dahm*, 70 F.3d 983, 985–86 (8th Cir. 1995) (Arnold, J.) (rejecting an identical argument and affirming the dismissal of an action for improper venue)*; Cottman*, 36 F.3d at 295–96. Because an insubstantial part of the claim arose in the Middle District of Florida, venue is improper under 28 U.S.C. § 1391(b)(2).

**CONCLUSION**

A Tampa bar called "Hattrick's" sues in the Middle District of Florida a Missouri bar called "Hattrick's" for trademark infringement and unfair competition. The Missouri bar, which operates a tavern only in O'Fallon, Missouri, maintains no restaurant or office in Florida; employs nobody in Florida; sells nothing in Florida; manufactures nothing in Florida; maintains no website and sells nothing online; purchases no newspaper, radio, magazine, television, Internet advertisement to solicit business from Florida; and maintains no bank account in Florida. The totality of the Missouri bar's purported "contact" with Florida comprises a Twitter account that follows several Florida sports teams and Facebook, Yelp, and TripAdvisor pages accessible in Florida.

In this circumstance, at least four reasons compel granting the motion to dismiss for lack of personal jurisdiction and improper venue. First, the Tampa bar fails to establish the applicability of Florida's long-arm statute. Nothing about the Missouri bar's relation with Florida "closely approximates" a principal place of business in Florida, which precludes the exercise of general jurisdiction. Although the long-arm statute permits exercising specific jurisdiction over a defendant that "commit[s] a tort within" Florida, the considered weight of authority holds that trademark infringement and unfair competition occur where the alleged infringer sells a product rather than where the plaintiff resides. Second, the exercise of personal jurisdiction absent "minimum contacts" with Florida violates due process. Third, subjecting the defendant to suit in Florida because a Floridian might access the Missouri bar's Facebook, Twitter, Yelp, or TripAdvisor page "offends traditional notions of substantial justice and fair play." Fourth, venue is improper in the Middle District of Florida because the defendant resides outside this district and because an insubstantial part of the claims occurred in this district. The motions (Docs. 7 and 19) to dismiss for lack of personal jurisdiction and improper venue are **GRANTED**, and the action is **DISMISSED**.

Although the Tampa bar's arguments for personal jurisdiction and venue ultimately fail, dicta in several decisions arguably appears to support the Tampa bar (in fact, the applicable precedent decisively favors the Missouri bar). Not "objectively baseless," the attempt to subject the Missouri bar to the jurisdiction of

a court in Florida merits no attorney's fee. *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S.Ct. 1749 (2014) (clarifying the "exceptional" conduct that warrants an attorney's fee under the Patent Act, which contains a fee-shifting provision materially identical to the Lanham Act). The Missouri bar's request for an attorney's fee is **DENIED**, and the clerk is directed to **CLOSE** this case.

ORDERED in Tampa, Florida, on September 21, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE